UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

DAVID VERCRUYSSE,

                Plaintiff,

      v.                                         **DECISION AND ORDER**
                                                     19-CV-743S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
———————————————————————

       1.     Plaintiff David Vercruysse brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles XVI and II of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.     Plaintiff protectively filed his applications with the Social Security Administration on July 7, 2015.  Plaintiff alleged disability beginning November 1, 2012, due to cervical spine disorder; lumbar spine disorder; depression; anxiety; and substance abuse disorder (R.[1] at 19).  Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

       3.     On January 18, 2018, ALJ Lisa Martin held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Kim Williford appeared and testified.  (R. at 34-64.)  At the time of the hearing, Plaintiff was 44 years old, with a high school education, and past work as a warehouse worker (R. at 27).

---

[1]Citations to the underlying administrative record are designated as "R."

4.     The ALJ considered the case *de novo* and, on July 27, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 13.)  Plaintiff filed a response on March 6, 2020 (Docket No. 14), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **denied**, and Defendant's motion is **granted**.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2]The ALJ's July 27, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142 (1987).

9.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

> fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 1, 2012, the onset date.  (R. at 18.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  cervical spine disorder; lumbar spine disorder; depression; anxiety; and substance abuse disorder.  Id. at 19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.      Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, but no ladder, rope, or scaffold climbing; no exposure to dangerous work hazards, including unprotected heights and exposed moving machinery; no exposure to crowded work settings (such as movie theater settings); Plaintiff limited to routine, simple tasks that do not require fast, assembly-quota pace; limited to occasional required work interactions with co-workers, supervisors, and the public and limited to a work setting that will allow for up to three percent off task behavior during the workday due to symptom exacerbation (R. at 22).

13.      At step four, the ALJ found Plaintiff is unable to perform his past relevant work due to warehouse work requiring climbing ladders, ropes, or scaffolding that Plaintiff's RFC would not permit.  (R. at 27.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. The ALJ adopted the opinion of the vocational expert that a claimant like Plaintiff could work in such occupations as packager or laundry worker, both medium exertion occupations.  (R. at 27-28.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 28.)

14.      Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ improperly relied upon her lay assessment of the medical evidence given the lack of medical opinion in that record (No. 9-1, Pl. Memo. at 1, 11-17). Plaintiff also faults the Appeals Council for improperly rejecting his post-hearing evidence (id. at 1, 18-20).  Plaintiff presented evidence of his continued mental health treatment after ALJ's decision (id. at 19), but the Appeals Council held that the result would not change even with this treatment evidence.

15.     For the reasons that follow, this argument is **unavailing**.

16.     On the ALJ's relying upon her lay opinion, Plaintiff argues that the ALJ relied upon her own evaluation of the raw medical data (the ALJ's reading of Plaintiff's cervical imaging and review of physical therapy (see R. at 23-24)) and Plaintiff concludes that this material was too technical and complex for a lay judgment (No. 9-1, Pl. Memo. at 11-12). Plaintiff adds that the ALJ failed to consider Plaintiff's headaches due to his cervical impairment and the degree of interference from his pain and headaches (id. at 12).

17.     Defendant Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff was not disabled, specifically that the ALJ properly determined his RFC (No. 13-1, Def. Memo. at 15-19).  Reviewing the record, Defendant contends that there was no objective evidence of limited range of motion, muscle spasm, or other cervical symptoms during examinations in August 2015 to November 2016 (R. at 573, 584, 589, 595, 602; No. 13-1, Def. Memo. at 16).

18.     In reply, Plaintiff points out the complaints he made in the medical record that the ALJ disregarded (Docket No. 14, Pl. Reply Memo. at 2).

19.     While the ALJ was not medically trained to review the MRI imaging (R. at 488), the medical record Plaintiff cites to are to his complaints (Docket No. 9-1, Pl. Memo. at 13-14; Docket No. 14, Pl. Reply at 2; R. at 558, 538 (blood test results), 694-702, 588), his testimony of bad headaches (R. at 46), and conclusions by medical professionals of muscle spasms (R. at 560 (Apr. 21, 2017, examination, noting cervical paraspinal muscle spasm), 527, 528 (physical therapy evaluation, June 13, 2017).  The April 21, 2017, examination, however, was for Plaintiff's complaints about cramping and pain in his calf

(R. at 558) and not his neck or cervical spine.  He was assessed for cervicalgia and an x-ray was ordered (R. at 561).

20.     Plaintiff has not pointed to parts of the record that the ALJ should have considered (such as a medical opinion) instead of relying upon her review of the record. As collected by Defendant (Docket No. 13-1, Def. Memo. at 16), Plaintiff's medical record indicates no limited range of motion, muscle spasms, or cervical symptoms for examinations from August 2015 to November 2016 (id.).  Plaintiff's physical therapy assessment in June 13, 2017, reported that Plaintiff had headache pain that begun "3-4 months ago" (R. at 694) and noted Plaintiff started with moderate impairments in ranges of motion and mild pain (one to two in a zero to ten scale) (R. at 694-95) (see Docket No. 13-1, Def. Memo. at 17 (Plaintiff's subsequent appointments did not complain of cervical pain)).

21.     Thus, there is substantial evidence for the ALJ's finding as to Plaintiff's cervical pain.  Plaintiff's motion (Docket No. 9) on this ground is **denied**.

22.     On Plaintiff providing additional evidence to the Appeals Council, the Appeals Counsel should remand upon presentation of new evidence that in reasonable probability would change the outcome of the decision and claimant showed good reason for not informing the Social Security Administration about or submitting the evidence earlier, 20 C.F.R. § 404.970(a)(5) (No. 9-1, Pl. Memo. at 18).  Appeals Council must review all evidence, as well as additional evidence, 20 C.F.R. § 416.1479 (id.).  If the new evidence is not considered by Appeals Council, relief granted on judicial review is remand for consideration in light of new evidence (id. at 19).

23.     Plaintiff sought consideration of continued mental health treatment and his left ankle fracture in April 2018 requiring surgery by the Appeals Council (No. 9-1, Pl. Memo. at 19-20; see No. 14, Pl. Reply Memo. at 2-3).

24.     On the mental health treatment, the ALJ found that Plaintiff had sparse evidence of treatment from the onset date to 2015, then noted hospitalization and subsequent treatment Plaintiff obtained in July 2015 through 2017, as well as substance abuse treatment (R. at 24-25).   The ALJ then found that there was no evidence of subsequent mental health treatment since September 25, 2017 (R. at 24, 753).   Plaintiff indicated to the Appeals Council that he did seek mental health treatment in late 2017 and in 2018 (R. at 2, 67-69; Docket No. 9-1, Pl. Memo. at 10, 19).

25.     The fact that Plaintiff continued mental health treatment around the time of the hearing would not change the finding by the ALJ.   Plaintiff also was given an opportunity by the ALJ at the January 2018 hearing to supplement the record, but Plaintiff did not do so until July 2018 well after the ALJ closed the record (R. at 37-38, 65-71; Docket No. 13-1, Def. Memo. at 20).   Thus, the Appeals Council did not err in failing to remand on this record.

26.     On Plaintiff's ankle, it is a distinct impairment different from the impairments considered by the ALJ (cervical and lumbar spine disorders, substance abuse disorder, anxiety, and depression).   The ankle might be the basis for a new application (if it lasted or expected to last for twelve months, cf. Docket No. 13-1, Def. Memo. at 21), but it is not related to the impairments in this application.

27.     The Appeals Council did consider, but rejected, Plaintiff's new evidence (R. at 2), see also Herod v. Astrue, No. 06CV767, 2008 WL 3155161, at *8 (W.D.N.Y.

Aug. 4, 2008) (Telesca, J.).  Therefore, there is no basis for remand and Plaintiff's Motion (Docket No. 9) on this ground is **denied**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        August 4, 2020
              Buffalo, New York


                                             s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                     United States District Judge